■ THRUWAY INVESTMENTS et al., Respondents, v O'CONNELL & ARONOWITZ, P.C., Appellant. [772 NYS2d 716]—

Crew III, J. Appeal from a judgment of the Supreme Court (Hughes, J.H.O.), entered August 16, 2002 in Albany County, upon a decision of the court in favor of plaintiffs.

In 1983, plaintiffs Jagadish Garg and Pushpa Garg formed a limited partnership, plaintiff Thruway Investments, for the purpose of acquiring a local hotel. At or about the same time, the Gargs incorporated plaintiff P & JG Enterprises, Inc. for the purpose of operating the hotel and its restaurant. Thruway purchased the hotel and the ground lease for $2.8 million. Pursuant to the terms of the ground lease, Thruway was obligated to pay annual rent and was responsible for all real estate taxes.

In 1990, the Gargs, believing that Thruway's tax assessment was excessive, petitioned for reduction of the assessment and simultaneously began withholding payment of the real property and school taxes until they obtained a decision regarding the petition. On May 25, 1990, pursuant to the terms of the ground lease, the lessor served a 90-day written notice of Thruway's default in its payment of the real estate taxes. As a consequence, in August 1990, Jagadish Garg consulted with Neil Rivchin, a member of defendant law firm. Rivchin referred the matter to an associate, David Demeter, who concluded that there were no defenses to Thruway's default in the payment of its real estate taxes and, accordingly, wrote to Jagadish Garg, urging that he pay the taxes at once "in order to avoid a forfeiture of the Premises." In spite of this advice, Jagadish Garg did not bring the taxes current and, as a consequence, on October 18, 1990, Thruway was served with a petition to recover real property returnable October 30, 1990.

On October 24, 1990, the Gargs met with Rivchin and presented him with the petition. Defendant made no written reply to the petition and did not appear in City Court to contest it. Instead, on October 29, 1990, the Gargs signed a retainer agreement on behalf of Thruway authorizing commencement of chapter 11 bankruptcy proceedings (*see* 11 USC § 1101 *et seq.*) and, at the same time, executed a personal guarantee agreeing to be personally liable for the counsel fees and expenses incurred by defendant in the event Thruway defaulted. Eventually, the chapter 11 proceeding was converted to a chapter 7 proceeding for liquidation of Thruway's assets (*see* 11 USC § 701 *et seq.*). Ultimately, Bankruptcy Court approved the sale of the ground

lease to Thruway's creditors at auction for $25,000. Defendant, who had represented Thruway throughout the bankruptcy proceedings, was awarded $35,000 for counsel fees in that regard. Because defendant's total legal fees substantially exceeded those awarded by the Bankruptcy Court, defendant commenced a collection action against the Gargs on their personal guarantee for the balance of its legal fees. Jagadish Garg failed to interpose an answer in that action and, as a result, a default judgment was entered against him in the amount of $81,637.71.

Plaintiffs thereafter commenced this action alleging that defendant had committed various acts of legal malpractice while representing plaintiffs' interests during the defense of the eviction proceeding, the commencement of the bankruptcy proceeding and the attempted sale of the leasehold interest in the hotel property during the bankruptcy proceeding. Following a nonjury trial, Supreme Court found, inter alia, that defendant was guilty of malpractice in failing to appear and present affirmative defenses in the eviction proceeding and in giving erroneous advice regarding the filing of bankruptcy proceedings and awarded plaintiffs $1,928,742 in damages, plus interest and costs. Defendant appeals.

Plaintiffs essentially seek damages for three particular acts of malpractice—defendant's failure to appear and present affirmative defenses in the eviction proceeding, defendant's representation of plaintiffs during the course of the bankruptcy proceeding and the erroneous advice given by defendant to plaintiffs regarding the commencement of that proceeding. With regard to defendant's failure to properly represent plaintiffs in the context of the eviction proceeding, defendant argues that the default judgment rendered in its favor in the collection action bars plaintiffs' subsequent malpractice claim. We cannot agree.

To be sure, where a client does not prevail in an action brought by counsel for the value of professional services, a subsequent action by the client for malpractice is barred by collateral estoppel (*see Koppelman v Liddle, O'Connor, Finkelstein & Robinson,* 246 AD2d 365, 366 [1998]) even where the judgment was entered by default (*see Chai Properties Corp. v Carb, Luria, Glassner, Cook & Kufeld,* 288 AD2d 44 [2001]). This rule, however, pertains only to the extent that the collection action sought recovery for the same legal services that the client subsequently alleges were negligently performed (*see Unger v Pascal,* 214 AD2d 431 [1995]).

Here, defendant sought recovery for legal services rendered from October 29, 1990 through September 22, 1992. Inasmuch

as the Gargs' claim that defendant committed malpractice by failing to appear and present affirmative defenses in the eviction proceeding predates that period, such claim is not barred by defendant's successful prosecution of and recovery in the collection action.[1] However, any claim in that regard by Thruway or P & JG Enterprises does fail—not because it is barred by collateral estoppel but, rather, because there is no evidence that defendant was representing either entity at this particular point in time. Thus, as to defendant's conduct in the context of the eviction proceeding, only the Gargs' claim for malpractice and damages survives.

Turning to defendant's representation of plaintiffs during the course of the bankruptcy proceeding, it is clear from a review of both the underlying retainer agreement and the personal guarantee executed by the Gargs that the relevant "client" was Thruway and not the Gargs or P & JG Enterprises. That being the case, neither the Gargs nor P & JG Enterprises has a claim for any malpractice occurring between October 29, 1990 and September 22, 1992 as defendant was not representing them during this time period. Although the advice given to Thruway had potential consequences vis- a-vis P & JG Enterprises, that did not transform the latter into a client for purposes of the bankruptcy proceeding. As for Thruway's malpractice claim with regard to defendant's representation of it during the bankruptcy proceeding, it has long been the rule that "[u]pon the filing of a voluntary bankruptcy petition, all property which a debtor owns or subsequently acquires, including a cause of action, vests in the bankruptcy estate" (*DeLarco v DeWitt*, 136 AD2d 406, 408 [1988]), and a debtor lacks the legal capacity to sue on any undisclosed claim that accrued prior to the close of the bankruptcy proceeding (*see id.*).[2] Here, it is undisputed that the Gargs failed to disclose Thruway's cause of action for mal-

---

1. We note in passing that even if Jagadish Garg's claim for malpractice in this regard otherwise was barred, Pushpa Garg's claim would survive as she appeared and answered in the collection action and there is no indication that a judgment was entered against her.

2. We acknowledge the discrepancy between our prior interpretation of 11 USC § 541 (a) and that of a number of federal courts. While *DeLarco v DeWitt* (*supra*) holds that all property that a debtor owns *or subsequently acquires* vests in the bankruptcy estate, federal courts have held that property acquired by the debtor postpetition remains the debtor's property (*see e.g. In re Bell v Bell*, 225 F3d 203, 215 [2d Cir 2000]). Such distinction is of no moment here inasmuch as Thruway's cause of action, whether asserted as a single claim or several disparate claims, is traceable to and "sufficiently rooted" in Thruway's prebankruptcy past that they became property of the bankruptcy estate upon filing of the chapter 11 petition (*see O'Dowd v Trueger*, 233 F3d 197, 201, 203-204 [3d Cir 2000]).

practice to the Bankruptcy Court and, therefore, Thruway is precluded from asserting a claim in this regard.

We reach a contrary conclusion, however, with respect to the Gargs' claim that defendant erroneously advised them that filing for chapter 11 protection was the only way to avoid forfeiture of the hotel. The record plainly reflects that the Gargs consulted with defendant prior to and on the eve of executing the retainer agreement as to how to protect *their* interests in avoiding forfeiture of the hotel and, therefore, defendant was representing the Gargs at the time it informed them that their only recourse was to file for chapter 11 protection. Thus, while neither Thruway nor P & JG Enterprises has a malpractice claim in this regard, the Gargs' claim survives.

To summarize, only the Gargs' claims for malpractice with respect to defendant's failed representation of them in the context of the eviction proceeding and the erroneous advice given to them by defendant regarding the commencement of the bankruptcy proceeding remain intact. We therefore remit this matter to Supreme Court for a determination as to what, if any, damages are causally related to these sustained malpractice claims.

Mercure, J.P., Peters, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.